RAILROAD COMMISSION OF THE STATE OF
MISSISSIPPI *v.* LOUISVILLE & NASHVILLE
RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

No. 903.  Submitted May 13, 1912.—Decided June 7, 1912.

A mere conflict between courts concerning the right to adjudicate
upon a particular matter growing out of a priority of jurisdiction
in another forum involves a question of comity, which there is no
right to consider on a direct appeal to this court under § 5 of the
act of 1891.  *Courtney* v. *Pradt*, 196 U. S. 89.

In this case *held*, that the Circuit Court in taking jurisdiction and
deciding the cause on the merits, notwithstanding there was a partial
demurrer to the jurisdiction, maintained its power and jurisdiction
as a Circuit Court, and also necessarily decided questions arising
under the Constitution expressly alleged in the bill.

Where in rendering a decree on the merits the court necessarily decided
the constitutional question expressly alleged in the bill, the issue on
that subject is open in this court, whether the jurisdictional question
be certified or not.

THE facts are stated in the opinion.

*Mr. Henry L. Stone, Mr. G. L. Smith, Mr. Marcellus
Green* and *Mr. Garner Wynn Green,* for appellee, in support of motion.

*Mr. Hannis Taylor, Mr. Claude Clayton* and *Mr. W. D.
Anderson* for appellants, in opposition thereto.

MR. CHIEF JUSTICE WHITE delivered the opinion of
the court.

This case is before us on a motion to dismiss or affirm.
The confused state of the record requires, in order to
make clear the considerations which control us in dispos-

ing of the motion, a fuller statement than otherwise would. be necessary.

On August 5, 1908, a suit in equity was commenced in the Chancery Court of Hancock County, Mississippi, against the Louisville & Nashville Railroad Company to compel obedience to an order of the State Railroad Commission of Mississippi requiring the stoppage of certain interstate trains at a particular place. Upon the ground of diversity of citizenship, the railroad company removed the cause into the appropriate Circuit Court of the United States. Thereupon proceedings were commenced in the Chancery Court of Harrison County, Mississippi, against the railroad company to enforce an act of the legislature of Mississippi approved March 20, 1908, known as the anti-removal statute, by perpetually enjoining the company from engaging in intrastate commerce within the State of Mississippi and by subjecting it to large pecuniary penalties. It was specifically averred in the bill that the railroad company was a corporation organized and existing under the laws of the State of Kentucky, and that it had never been incorporated under the laws of Mississippi.

This case was then commenced on behalf of the railroad company in the court below against the Railroad Commission and various officials of the State of Mississippi to enjoin the commencement of any other proceeding than that pending in Harrison County, having for its object the enforcement of the forfeiture and penalty provisions of the act of 1908, which act was assailed as repugnant to the commerce clause, the contract clause and to specified provisions of the Fourteenth Amendment. The Chancery Court of Harrison County was also averred to be without jurisdiction of the suit pending before it. The complainant railroad company was alleged to be a corporation created and organized under the laws of Kentucky and a citizen of said State, having its principal place of business at Louisville, Kentucky. The defendants were alleged to

be citizens of the State of Mississippi. It was further alleged that the complainant, as a corporation as aforesaid, owned and operated as a common carrier a railroad between Cincinnati and New Orleans passing through various counties in the State of Mississippi, and that it had been for more than twenty-five years engaged in the operation of a portion of its road so situated in Mississippi. Evidently for the purpose of laying the basis for a claim of contract right the facts concerning the construction of the road operated by the complainant in the State of Mississippi were stated in substance as follows: In 1866 the legislature of Alabama incorporated what was known as the New Orleans, Mobile and Chattanooga Railroad Company, and authorized it to build a railroad from Mobile to New Orleans; an act of the legislature of Mississippi, passed in 1867, which was attached as an exhibit to the bill, authorized and empowered the Alabama corporation "to exercise and enjoy its corporate power and franchise in the State of Mississippi." An act of the legislature of Louisiana authorized the same corporation to construct its road from the Mississippi state line to New Orleans; and an act of Congress approved in March, 1868 (March 2, 1868, 15 Stat. 38, c. 15), empowered the corporation in the construction of its road to build bridges over navigable waters in the State of Mississippi. There were also averments of the placing by the Alabama corporation of a mortgage upon its property and the subsequent construction of the road from Mobile to New Orleans; a change of the name of the railroad by the legislature of Alabama to the name of the New Orleans, Mobile and Texas Railroad; default in the payment of bonds; a foreclosure sale; the incorporation of the purchasers by the name of the New Orleans, Mobile and Texas Railroad Company, as reorganized. It was then specifically alleged that said company "thereafter, on October 5, 1881, sold and conveyed all of its property and franchises of every kind and

description except the franchise to be and exist as a corporation, to complainant, who has ever since owned said railroad and operated it as a common carrier of interstate and intrastate freight and passengers as aforesaid."

Proceedings contained in the transcript, to which we shall hereafter have occasion to refer, as well as the index to the transcript as filed, contained in the printed transcript, establish that a demurrer was filed to the bill of complaint, which is not in the printed record, and we do not therefore refer to the same. Nearly three years after the filing of the bill what was styled "Partial Demurrer to Original Bill" was filed in the cause. This demurrer charged, first, that the court was without jurisdiction because on the face of the bill it was shown "that the complainant, the Louisville & Nashville Railroad Company, is a Mississippi corporation, and that the defendants are also citizens of Mississippi, and that therefore there is no diversity of citizenship between the parties to give the court jurisdiction of the cause." This claim was solely attempted to be supported by argumentative statements in the demurrer as to the effect of the averments in the bill concerning the history of the portion of the road in Mississippi, its construction by an Alabama corporation, the legal effect of the Mississippi act of 1867 authorizing the Alabama corporation to build a road in Mississippi and the supposed operation of an act of the legislature of Mississippi of 1882 upon the purchase of the road built in that State following the foreclosure, which, it was averred, took place in 1883 after the passage of the act of 1882, instead of in October, 1881, as averred in the bill. As an additional and independent ground of demurrer, it was claimed that the suit should be dismissed because "at the time the suit in the case of *State* v. *Louisville & Nashville Railroad Company* was filed in the Chancery Court of Hancock County, Mississippi, there was no Federal question on the face of the bill which authorized its removal under

the Constitution and Laws of the United States, and said suit is made an exhibit to this demurrer for the purpose of considering the same."

On the day the "Partial Demurrer" was filed an answer was filed, which was divided into numbered paragraphs corresponding to the numbered paragraphs of the bill. The citizenship of the plaintiff was neither admitted nor denied, and we think it suffices from the view we take of the case to say that the answer in one mode or another dealt mainly with the averments of the bill respecting the history of the organization of the New Orleans, Mobile & Chattanooga Railroad Company, the construction of the road in Mississippi, the sale under foreclosure, the purchase, etc. A few days afterwards a general replication was filed, and on the same day a stipulation was entered into between counsel in the first paragraph of which it was provided as follows:

"That this cause may be submitted and heard at the May term, 1911, of said court at Jackson, and that the time for taking proof under the rules is waived, and that said cause may be heard on the original bill, partial demurrer, and partial demurrer and replication by the Court, and that setting the cause for hearing under this agreement shall not operate to admit the allegations of the answer."

The foregoing was followed, in the next paragraph of the stipulation, by a provision for a hearing of the cause "upon the bill and answer and replication upon the testimony theretofore taken by affidavits . . . and any other evidence that may be offered orally by either side on the hearing," and various specified printed charters and statutes which were enumerated and which concerned facts alleged in the bill and answer were stipulated to be admitted in evidence.

While it is certain that on or before October 24, 1911, the court entered a final decree in favor of the complainant, perpetually enjoining the enforcement of the Missis-

sippi statute complained of, the exact form of that decree is not disclosed, for although there is a paper in the record which in one aspect apparently states the terms of the decree, in another aspect it is uncertain whether the paper referred to is anything but a motion made by the defendants for the modification of the decree. Be this as it may, the record leaves no doubt that on October 28, on the motion of the defendants, a new and changed form of final decree was entered, which was deemed to conform to the stipulation for submission. In this new decree it was first recited that the case had been submitted to and considered by the court primarily upon the partial demurrer, and that on such demurrer being overruled the defendant had elected to stand thereon, and had not excepted to the final decree on the merits. There was a recital in the concluding paragraph of the decree that a direct appeal to this court was allowed, notwithstanding the objection of the complainant.

In the printed transcript there is a paper styled Specifications of Error, which is undated and uncertified, but which we will assume was filed at the time the appeal was allowed. This paper is confined to a reiteration of the contentions as to want of jurisdiction of the court below as stated in the Partial Demurrer, adding the following:

"And, because, the bill shows on its face that the Federal Court is without jurisdiction, and could not hear and determine the issues raised by the said bill of complaint because the Louisville and Nashville Railroad is a Mississippi Corporation, and the Act of 1908, which prevents the removal of causes of foreign corporations to the Federal Court, had no reference and application to the said Louisville and Nashville Railroad Company, which is a domestic corporation; and because the Act of 1908, referred to in said Bill of complaint, enacted by the Mississippi Legislature is unconstitutional and void, and in contravention of the Federal Constitution."

The appellee moves to dismiss or affirm and in the brief of counsel the ground for the motion to dismiss is thus stated:

"The appeal in this case should be dismissed because the jurisdiction of the Circuit Court is the sole question raised, and such question has not been certified by the Circuit Court to this Court."

The appellants, while concurring that jurisdiction is the sole question involved, insist that that question is adequately presented by the action of the court or sufficiently appears upon the face of the record to give power to review, and, meeting the motion to affirm, it is insisted that the court below erred in holding that there was a sufficient averment of diversity of citizenship in the bill to give jurisdiction as a Federal court and that even if this were not the case the court erred in taking jurisdiction because the subject-matter of the controversy prior to the institution of the suit below, as shown by the bill, was involved in and pending before a state court as the result of the action brought against the railroad company to enforce the Mississippi statute. The appellee, replying to these contentions and reiterating that the jurisdictional question was the sole question presented, yet proceeds to urge that even if the view be taken that the court below was wrong in deciding that adequate diversity of citizenship was alleged, nevertheless the judgment should be affirmed because of the existence of the constitutional question concerning the repugnancy of the Mississippi statute to the Constitution of the United States as to which the decision of the court was clearly right and not objected to. It becomes at once apparent when the contentions of the parties are thus summed up that the propositions urged on both sides are conflicting and irreconcilable one with the other, since both in effect insist that the sole question on which the direct appeal may rest is one of jurisdiction and yet at the same time urge that the juris-

dictional question is not the sole question because of the existence of one involving the construction of the Constitution of the United States. This is so obviously true as to the position taken by the appellee as to need only statement. That it is also true as to the position of the appellants is demonstrated by observing that it has long since been settled that a mere conflict between courts concerning the right to adjudicate upon a particular subject-matter growing out of a priority of jurisdiction in another forum involves a question of comity, which there would be no right to consider if the direct appeal involved solely a question of jurisdiction. *Courtney* v. *Pradt*, 196 U. S. 89, 91, and cases cited.

The confusion in the contentions of the parties which thus appears, in our opinion will be dispelled and the questions for decision be made apparent by a consideration of the statement heretofore made. From that statement we think there is no real room for controversy: First. That the court below in taking jurisdiction of the cause and deciding it notwithstanding the partial demurrer maintained its power and jurisdiction as a Federal court; Second. That in rendering a decree on the merits the court necessarily decided the question or questions under the Constitution expressly alleged in the bill. This conclusion dispenses with the necessity of considering the question of certificate as to jurisdiction, since the issue on that subject, whether certified or not, is open, in view of the constitutional questions raised in the bill. *Chappell* v. *United States*, 160 U. S. 499, 509.

While logically this view would adversely dispose of the motion to dismiss, it would undoubtedly, as a general proposition, require the granting of the motion to affirm without passing upon the question of diversity of citizenship, since, from the statement we have made of the case, it appears that the correctness of the decision below as to the constitutional question was in effect conceded. We

think, however, there is room for concluding that the argument on behalf of the appellants, upon the theory that it is justified by the record, proceeds upon the hypothesis that if there was no diversity of citizenship, the statute assailed in the bill was on its face so plainly inapplicable to the situation as to cause the assertion of its repugnancy to the Constitution to be unsubstantial and frivolous and therefore insufficient to afford a basis either for jurisdiction in the court below or to warrant an affirmance by this court of the decree which was made below. As even although the premise upon which this proposition rests be not conceded, the demonstration of its unsoundness would require a consideration of the subject of diversity of citizenship and the relation of that subject to the assault made by the bill upon the statute, to avoid unnecessary analysis we come at once to consider the sufficiency of the averments of the bill as to the diverse citizenship of the complainant.

The whole argument as to the citizenship of the complainant turns not upon an express denial by the appellants in any form of the Kentucky citizenship of complainant directly alleged in the bill, but upon an insistence that the express averment upon that subject is so qualified by the subsequent allegations recounting the history of the road in Mississippi as at least to engender doubt sufficient to destroy the effect of such positive averment. No statement in the bill directly and expressly giving rise to such result is relied upon, but the whole contention is that by inference or subtle analysis of various paragraphs of the bill it must follow that the result above stated arises. Without, however, undertaking to restate the passages in the bill relied upon or to follow the forms of statement by which the result claimed to arise from the bill is sought to be demonstrated, we content outselves with saying that we think the conclusion deduced from them is unwarranted, for the following reasons: *a.* Because the passages

in the bill relied upon to create the doubt or inconsistency when construed in connection with the context had reference to the alleged impairment of the obligation of a contract and were not addressed to the subject of citizenship; *b.* Because it would do violence to the very purpose of the bill to attribute to it the self-destructive effect which would result from upholding the contention insisted upon, especially in view of the nature and character of the litigation and the relation of the parties to the subject-matter in controversy. We say this because the very object of the bill was to prevent the State from enforcing against the company, as a foreign corporation owning and operating the road in Mississippi, a forfeiture and penalties which it is admitted would not have been applicable to the corporation if it was a domestic corporation of Mississippi. Nothing could make the conditions stated clearer than to recall the argument, heretofore adversely disposed of, which was pressed upon our attention by counsel for appellants to demonstrate that the court erred in exerting jurisdiction because of the pendency of the suit in the state court brought by the State of Mississippi wherein it was expressly averred that the railroad company was a corporation of the State of Kentucky and that it had never been incorporated in the State of Mississippi.

From these considerations it results that the judgment below must be and it is

*Affirmed.*