## C. C. REYNOLDS, Respondent, ST. LOUIS SOUTH-WESTERN RAILWAY COMPANY, Appellant.

**Springfield Court of Appeals, January 8, 1917.**

1. **CARRIERS: Interstate and Intrastate Commerce: How Distinguished.** If through a continuity of movement goods delivered to a carrier for transportation are destined at the time they are started for a point in another State, the shipment is regarded as interstate commerce and therefore falling within the purview of the interstate statute in respect of rates rather than intrastate, through the bill of lading when looked to alone may suggest the latter.

2. ———: **Shipments: Interstate and Intrastate.** Action for destruction of goods shipped. Plaintiff, a showman, was going from a town in Arkansas to a Missouri town. He checked his baggage, consisting of a moving picture show outfit and other articles, from the Arkansas town to a town in Missouri near the State line and then rechecked it to his destination with the intention of avoiding the baggage regulations governing interstate shipments. The fire which destroyed the outfit occurred while the car was at the last checking place waiting to be taken to the point of destination. This was an interstate shipment and not an intrastate one and the carrier's liability is limited by the Interstate Commerce Commission regulations.

Appeal from New Madrid County Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

REVERSED AND REMANDED.

*Edw. A. Haid, A. L. Buford* and *Wommack & Welborn* for appellant.

*J. F. Kifer, J. L. Downing* and *H. N. Phillips* for respondent.

FARRINGTON, J.—The plaintiff recovered a judgment for damages in the sum of $1750 on account of the total loss of a moving picture show outfit, a number of articles such as are used by sleight of hand performers, and other paraphernalia of a moving show.

Plaintiff bought a ticket from Bernie, Mo., to Delta, Mo., towns on defendant's line of railway, and checked

his show outfit to Delta, paying excess baggage charges. These articles were in a car on the track at Bernie, having been transported by defendant from St. Francis, Ark. While the car was waiting at Bernie to be transported to Delta an explosion occurred in the car from some cause not disclosed and the car and contents were consumed by fire.

The petition was based on the theory that the shipment from Bernie to Delta was an intrastate shipment, that the defendant was an insurer, and, having failed to deliver the plaintiff's property at its destination, was liable for its value. This was the theory adopted by the trial court in the instructions given and is the theory on which the judgment was rendered, and, of course, is the theory on which respondent seeks to have the judgment affirmed.

The defendant set up the defense that this car of goods was shipped by the plaintiff from Humphrey, Ark., to Delta, Mo., that it was an interstate shipment, and that the liability for the loss, if any, is to be governed by the rules applicable to a loss sustained by an interstate shipment rather than the rules applicable to a loss sustained by an intrastate shipment.

Defendant offered to prove the tariff approved by the interstate Commerce Commission under which it claims the shipment was made from Humphrey, Ark., to St. Francis, Ark., and from St. Francis, Ark., to Bernie, Mo., and from Bernie, Mo., to Delta, Mo., as follows:

Baggage of Excess Value: (a) This company will not accept for transportation as baggage from any one passenger property that is declared to exceed twenty-five hundred dollars in value. (b) Unless a greater sum is declared by the passenger and charges paid for increased valuation at time of delivery to carrier, the value of baggage belonging to or checked for an adult passenger shall be deemed and agreed to be not in excess of one hundred dollars, and the value of the baggage belonging to or checked for a child traveling on a half ticket shall be deemed and agreed to be not in excess

of fifty dollars. (c) If passengers, at the time of check-
ing baggage, declares, according to the form prescribed
by checking carrier, a greater value than one hundred
dollars for an adult and fifty dollars for a child, each one
hundred in value, or fraction thereof, above such al-
lowance will be charged for at ten per cent of the excess
baggage rate per hundred pounds, for the distance car-
ried. The minimum rate will be ten cents per hundred
dollars and the minimum charge for increased valuation
twenty-five cents. (d) Charges for declared excess valu·
ation must be prepaid. Note. Excess Baggage Money
Book coupons will not be accepted for excess valuation;
the collection of excess valuation must be made in cash.''

"20. Public Entertainment Paraphernalia. (a)
Property and scenery, domestic and trained animals,
calcium light cylinders (consisting of one cylinder con-
taining hydrogen gas and one cylinder containing oxygen
gas, see note), stereopticon outfits, musical instruments,
tents and tent poles (not exceeding fifteen feet in length)
balloons, securely wrapped and roped and other para-
phernalia of size of character convenient for safe hand-
ling in baggage cars, used in producing a theatrical per-
formance, concert, lecture or other public entertainment,
indoors or out of doors, which may be loaded in ordinary
baggage cars, will be transported at owner's risk, in reg-
ular baggage service, subject to the usual allowance and
excess weight charged for at regular excess baggage
rates, or in special baggage car (subject to special bag-
gage car rules), at the convenience of the carrier, except
that no article or animal weighing over 250 pounds will
be accepted for transportation in regular baggage serv-
ice.''

The foregoing matter which defendant offered to
introduce in evidence were excluded by the court on the
theory that the shipment was intrastate and not inter-
state.

The instructions offered by the defendant presented
the theory of an interstate shipment which it relied upon
and these were refused.

We agree with the appellant that the court erred in excluding the evidence referred to and holding that the shipment under the evidence introduced was intrastate in character for the reason that plaintiff's own testimony shows conclusively—according to the decisions of the Supreme Court of the United States—that the shipment was interstate in character.

His testimony shows that when he packed his goods in the car at Humphrey, Ark. (the same car in which they were later destroyed at Bernie, Mo., never having been unloaded), he intended to make Delta, Mo., his destination, as well as the destination of the baggage. It also shows that he in no sense broke the continuity of the shipment, but that for the purpose of defeating the interstate rate he divided the trip into stages by purchasing tickets and rechecking the baggage. He testified: "I wanted to get by and I didn't violate the law by shipping from Humphrey to St. Francis, and then meant to ship to Campbell and then to Delta, because that commission comes pretty high." He also testified that the agent at Humphrey, Ark., spoke to him "about the Interstate Commerce Commission," and that "he already knew something about it, having shipped several times from one State to another," and "knew it was high." When he reached St. Francis where he intended in keeping the charges low to ship to Campbell, Mo., and then recheck to Delta, he learned of a gasoline engine that was to be operated that night (and which he desired to see in operation) at Bernie, Mo., on defendant's line of railway between St. Francis and Delta, and instead of checking to Campbell and then rechecking to Delta he checked to Bernie, intending to there recheck to Delta. After he reached Bernie the evidence shows that he desired and undertook to check from there to Delta in time to let the car go straight through on the train in which it was being transported without being stopped at Bernie but that he arrived at the depot too late, reaching there after the car had been set out of the train. He immediately bought his ticket to Delta and rechecked the baggage.

These facts clearly bring this shipment within the character of interstate commerce under the rulings of the Supreme Court of the United States in the following cases: Texas & New Orleans R. Co. v. Sabine Tram Co., 227 U. S. 111, 57 L. Ed. 442; Railroad Commission of Louisiana v. Texas & Pacific Ry. Co., 229 U. S. 336, 57 L. Ed. 1215; Southern Pacific Terminal Co. v. Interstate Commerce Commission and Young, 219 U. S. 498, 55 L. Ed. 310; Boston & Maine R. v. Hooker, 233 U. S. 97, 58 L. Ed. 868, a baggage case; and Baer Brothers Merc. Co. v. Denver & Rio Grande R. Co., 233 U. S. 479, 58 L. Ed. 1055. In Louis Werner Sawmill Co. v. Kansas City So. Ry. Co.,—Mo. App.—, 186 S. W. 1118, the St. Louis Court of Appeals said: "The court pays but slight heed to the billing in matters of this character because of the opportunity for the practice of subterfuge which attends it and looks rather to the substance of the transaction as by inquiry touching the intention of the parties to transport the goods into a foreign State or country through continuity of movement which attends or is contemplated in the transaction. Therefore it is said that the shipment takes on the character of either intrastate or interstate commerce at the point the shipment is started. The rule reflected in the authorities is that if, through continuity of movement, the goods are destined at the time they are started for a point in another State, the shipment is regarded as interstate commerce, and therefore falling within the purview of the interstate statutes in respect of rates rather than intrastate, though the billing when looked to alone may suggest the latter." citing the two cases first above cited. [See, also, Wright v. Southern Pac. Co., 181 Mo. App. l. c. 141, 167 S. W. 1137.] This question is discussed at length in the text and notes of Fuller's Interstate Commerce, page 74, under the title "Goods Shipped Between Points Within a State to be Transported to or from a Foreign Country."

In the case of Chicago, Milwaukee and St. Paul Ry. Co. v. Iowa, 233 U. S. 334, 58 L. Ed. 988, it is held that the question whether commerce is interstate or intrastate must be determined by the essential character of

the commerce, and not by mere billing or forms of contract; and further, that the fact that commodities received on interstate shipments are reshipped by the consignees in the cars in which they are received, to other points of destination, does not necessarily establish a continuity of movement, or prevent the reshipment to a point within the same State from having an independent and intrastate character. The court says the question is with respect to the nature of the actual movement in the particular case.

In the case of Gulf, Colorado & Santa Fe Ry. v. Texas, 204 U. S. 403, 51 L. Ed. 540, the court held that in view of the fact that the shipment there on the interstate bill of lading carried the goods to Texarkana, Texas, the mere intention on the part of the purchaser of those goods to sell them to someone at Goldthwaite, Texas, and rebilling them in the same cars under another contract did not make the latter contract interstate. That case is discussed in the case of Ohio Railroad Commission v. Worthington, 225 U. S. 101, 56 L. Ed. 1087. It will be noted in that case (i. e. 204 U. S. 403, 51 L. Ed. 540) that the corn remained in Texarkana five days; that the Hardin Grain Company was under no obligation to ship it further and that it could have filled its contract with Saylor & Burnett, the Goldthwaite consignees, with any other corn it saw fit and could have unloaded the corn shipped from South Dakota in Texarkana; that it was not paid for by the Hardin Grain Company until its receipt in Texarkana, and that the Hardin Grain Company did not have, until paid for, title and control of the corn until it had reached Texarkana and that was after the first contract of transportation had been completed. It must be admitted that the language of the Supreme Court in that case tends to support the contention of the respondent in the case before us, but later decision of the Supreme Court, hereinbefore cited, on facts similar to those in the case at bar, hold such a shipment to be interstate and not intrastate.

Respondent cites the case of Kolkmeyer v. Chicago & A. R. Co., 192 Mo. App. 188, 182 S. W. 794, which is based

on the case last discussed. However, we think the
facts in the case at bar contain the elements which the
Kolkmeyer opinion holds must control. The Kansas City.
Court of Appeals in that opinion, after discussing the
case of Railroad Commission of Louisiana v. Texas &
Pacific Ry. Co., 229 U. S. 336, 57 L. Ed. 1215, said:
"But we think this case" (meaning the Kolkmeyer case)
"lacks the controlling fact of that case. Here there was
no intention to ship to Horatio when the freight was de-
livered to defendant at Glasgow. The manifest intention
was to ship only to Kansas City at which point plaintiff
was to have free transportation to Horatio. Rates of
freight and rules of commerce did not concern plaintiff
further than Kansas City. The object of his delivery of
the stock to defendant at Glasgow was not for a through
shipment to Horatio. The object was to get it to a point
where commerce was at an end and plaintiff could have
free transportation. The face of the case wholly nega-
tives the idea that a through or continuous shipment was
intended to start at Glasgow and end at Horatio."

In our case, it was the admitted intention of the
plaintiff to ship his goods from Humphrey, Ark., to
Delta, Mo. It was intended by him, according to his own
testimony in this record, to be a continuous shipment,
and the only break in the shipment was because of his
failure to reach the depot at Bernie, Mo., in time to re-
check to prevent the car being set out of the train there.

This question has recently been before the Supreme
Court of this State in the case of Lusk et al v. Atkinson et
al., 186 S. W. 703, wherein a majority of the court held that
ties which were to be assembled at a tie buyer's yards in-
tended to be shipped out of Missouri were from the time
they were loaded on cars in Missouri at the initial loading
points' an interstate shipment in character although the
first stop at a point in Missouri—at the buyer's yards. The
court in determining the essential character of the ship-
ment holds (l. c. 710) that in order to decide this question
it is important and necessary to ascertain first what was
the motive or intention of the shipper and second what
was the object and purpose to which the shipment was

devoted. The minority opinion (of three of the seven members of the court) lays down this rule (1. c. 716): "In my opinion, none of those cases are applicable to the case at bar. In each the cargo was homogeneous, could have been shipped from the point of origin to the point of destination on a through bill of lading, and the uncontradicted evidence showed that the identical cargo in each case was intended to be shipped from the initial point to the point of destination, and that its stoppage in transit was for some collateral purpose, and not to break the continuity of the through shipment to some other State or country. But in the case at bar the ties were not homogeneous, and could not therefore have been shipped on a through bill of lading from said various points in Missouri, to places in New York and other points beyond the limits of this State." Under both the rules declared by the opinion and the dissenting opinion in that case, the shipment in the case at bar falls clearly within the class of interstate commerce.

Our search resulted in finding the case of Kanotex Refining Co. v. Atchison, Topeka & Santa Fe Ry. Co. (Case No. 6817), 34 I. C. C., 271-277, wherein the question passed upon by Harlan, Commissioner, is very similar to that to be decided in our case. There, the shipper admitted that he was shipping oil from a point in Kansas to be distributed in the State of Oklahoma, and that for the purpose of gaining an advantage in rates he shipped to a point near the State line and had the cars re-billed. The Commissioner held, citing certain decisions of the Supreme Court of the United States hereinbefore referred to, that the intention being to ship from one State into another State made the shipment interstate. The Commissioner discusses the case of Gulf, Colorado & Santa Fe Ry. v. Texas, 204 U. S. 403, 51 L. Ed. 540, supra, and points out that in that case the original seller of the grain at Hudson in South Dakota who paid the freight charges for the movement of the grain to Texarkana did not know of its ultimate destination, nor did the Harroun Commission Company know of its ultimation destination beyond Texarkana until it

arrived at Kansas City; and further that the Hardin Grain Company when it contracted for the cars to be delivered at Texarkana did not know where the grain would originate and that the contract between the Hardin Grain Company and the Harroun Commission Company· was completed in accordance with its terms when the grain was delivered to the Hardin Grain Company at Texarkana. These facts are held by the Commissioner to distinguish that case from the Worthington case, supra, and other cases decided by the Supreme Court of the United States. And for the same reasons is the case of Gulf, Colorado & Santa Fe Ry. v. Texas, supra, to be distinguished from the case before us. [See, also, State ex rel. Railway Co. v. Public Service Commission, 189 S. W. 377.]

We therefore hold that the trial court erred in ruling that this shipment under the plaintiff's statement of the facts was intrastate, and erred in excluding the evidence offered by the defendant and in refusing its requested instructions. The judgment is reversed and the cause remanded to be tried on the theory that this was an interstate shipment, and, therefore, whether the defendant is to be held to the extent of the liability fixed under the rules and tariff for a negligent destruction of plaintiff's property. *Robertson, P. J.,* and *Sturgis, J.,* concur.