## CHICAGO, R. I. & G. RY. CO. v. EDWARDS.
### (No. 1830.)

(Court of Civil Appeals of Texas. Amarillo. June 8, 1921.)

1. **Carriers** &#9758;383—**Conductor held entitled to eject passenger who tendered only Texas mileage on return trip from Oklahoma after crossing line.**

Where a passenger left a town in Texas to go to a town in Oklahoma, and on his return paid cash across the state line to a point where he intended to stop, but did not do so, the conductor has a right to eject him when on continuing his return trip he refused to pay other fare than mileage from a Texas mileage book, not good for "an interstate journey or any portion thereof," and tender of which the conductor refused.

2. **Estoppel** &#9758;63—**Selling ticket to interstate passenger for scrip from mileage book not good on interstate journey held not to estop carrier from claiming that passenger was interstate passenger.**

In an action against a carrier for ejection from a passenger train while attempting to ride on an interstate journey on a mileage book not good for such a journey, that after having been ejected defendant's agent sold plaintiff a ticket for scrip from such book held not to estop defendant from contending that plaintiff was an interstate passenger.

Appeal from District Court, Garza County; W. R. Spencer, Judge.

Action by J. H. Edwards against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Lassiter & Harrison, of Fort Worth, and C. E. Gustavus, of Amarillo, for appellant. G. E. Lockhart, of Tahoka, for appellee.

HALL, J. Appellee sued the Chicago, Rock Island & Gulf Railway Company and the Panhandle & Santa Fé Railway Company to recover damages on account of his ejection from a Rock Island passenger train

---

at McLean, Tex. He recovered judgment against appellant for $500. The pleadings are voluminous, and, since no question is made upon their sufficiency, their substance will not be stated.

[1] The first assignment of error is that the court erred in refusing to direct a verdict for the appellant. We sustain this assignment. The facts according to appellee's testimony are in substance these: That in the month of August, 1917, he left Tahoka, Tex., to go to Gary, Okl., to purchase some hay. It appears that he traveled from O'Donnell, Tex., to Abernathy, Tex., on a drover's pass, but left the stock train at Abernathy and took the passenger train from there to his destination. He had previously bought from the Panhandle & Santa Fé Railway Company at Tahoka a mileage book, for which he had paid $25, and which, according to its coupons, entitled him to travel 1,000 miles in Texas. The mileage book contained this stipulation: "This scrip is not good for an interstate journey or any portion thereof." It does not appear whether he used any of the mileage on the trip between Abernathy and the state line. He says that he reached Gary some time late in the evening and left there at 9 o'clock that night, expecting to stop at Sayre until the next day and look for some hay; that he bought a ticket from Gary to Sayre, but did not tell the conductor that he intended to stop at Sayre; after leaving Sayre, the conductor woke him up and asked him for his fare, and asked him where he was going, to which he replied that he was going to Texola; that he then paid his fare to Texola, amounting to about 90 cents. Then it seems he discussed his stock contract with the conductor, but had failed to sign it up, and told the conductor that he did not go up with the cattle. He knew that Benonine was the next station out of Texola. When the conductor first woke him and told him he had passed Sayre, he paid his fare to Texola, and after the train passed Texola the conductor came back through the car and woke him up, again asking him why he did not get off at Texola, and informed him that the train was then at Benonine. Appellee then asked him what the fare was to Benonine, and upon being informed that it was 10 cents paid the amount. He says the conductor thereafter asked him where he was going next; that he replied to Benonine, and after being informed that they had passed Benonine he offered his mileage book. It appears then that appellee refused, after crossing the state line into Texas, to pay any fare other than by exchanging scrip from his mileage book for transportation or tickets. In this way the payment of his fare was postponed after passing each station until the train reached McLean, where, at the request of the conductor, appellee was taken from the train by a deputy sheriff and detained until the train left. According to the printed stipulation on his mileage book quoted above, the conductor had the right to eject him, even at Benonine or any other station within the state, if appellee was an interstate passenger. It is said in the note to M., K. & T. Ry. Co. v. Ashinger, 63 Okl. 120, 162 Pac. 814, L. R. A. 1917D, 1184:

"The cases are somewhat confusing, if not conflicting, as to the effect of a break in the carriage of goods or passengers upon its nature as interstate or intrastate transportation. Doubtless some of this conflict is due to comparison of cases decided while the law concerning interstate commerce was in the earlier stages of its development; the tendency of such development being to increase the power of the federal authority over commerce and to bring transportation under the classification of interstate commerce, which at the earlier period would have been considered intrastate."

In the same note it is said (L. R. A. 1917D, 1193):

"The same principles governing the transportation of freight are applicable to the carriage of passengers, and in the following cases, which appear to be in conflict with Missouri, K. & T. Ry. Co. v. Ashinger, what is said at the beginning concerning freight cases should be kept in mind."

The writer then reviews White v. St. L. S. W. Ry. Co., 86 S. W. 962, and several other cases, and finally, showing the trend of the more recent decisions, reviews Ill. C. Ry. Co. v. Holman, 106 Miss. 449, 64 South. 7, Reynolds v. St. Louis Southwestern Ry. Co., 195 Mo. App. 215, 190 S. W. 423, and Colorado Free Pass Investigation, 26 Interst. Com. Comn. R. 491. The facts in the Holman Case are that appellee and his wife boarded one of appellant's trains at Vaiden, going from there to Grenada, where they changed cars and took another train for Memphis, Tenn. When the train left Grenada appellee tendered his mileage book to the conductor in charge of the train, stating to him that he was going to Memphis. The conductor informed him that he could not travel from Grenada to Memphis on his mileage, and appellee requested the conductor to carry him as far as he could on the mileage and asked the conductor to pull the mileage to Sardis, a point in Mississippi about 50 miles from Memphis. The conductor replied that he would see him after he had worked his train and after he had finished that duty he took out mileage to Sardis. When the train reached Sardis appellee got off, purchased tickets from that point to Memphis, again boarded the train, and tendered the tickets to the conductor. The latter refused to accept them unless appellee would first pay his fare in cash from Grenada to Sardis. Upon appellee's refusal to do this, at the request of the conductor, appellee was

removed from the train at Sentobia. The Supreme Court of Mississippi held that Holman had no right to recover, using this language:

"Appellee was attempting to violate his contract, and also to nullify the statutes of the United States. 'If this could be done, then, when the other state was reached, mileage for that state could be used from some real or fancied service, and so on, thus defeating the federal law entirely. In other words, the person could start from the state of Louisiana and go to the state of Illinois, using mileage all the way, only paying fare in crossing the borders of the states. After crossing the border, he could use mileage to the last station in that state, paying actual fare only on crossing the line into another state. This the Supreme Court has held cannot be done, but the provisions must be enforced in the same good faith with which they are enacted, and enforced in such way as to fulfill the purpose of the law. If this is not done, the law itself is held in contempt.' "

The syllabus of the Ashinger Case sufficiently states the facts and the holding of the court as follows:

"A. purchased a ticket over the defendant's railroad, from Oklahoma City, Okl., to Colbert, Okl., intending to proceed from the latter place to Achille, a point within this state. Upon reaching Atoka, Okl., he decided to proceed to Denison, Tex., and tendered defendant the unused portion of his ticket entitling him to passage as an intrastate passenger from Atoka to Colbert and cash fare at the interstate rate from Colbert to Denison, Tex., which was refused, and defendant demanded of him in addition to his ticket one cent per mile from Atoka to Colbert, which, with the ticket and the cash tendered by plaintiff, would equal the published tariffs for one continuous passage from Atoka to Denison. Plaintiff refused to pay this amount, and was evicted from the train at Colbert, and sued for damages for the eviction. Held, that plaintiff was an 'interstate passenger' from Atoka to Denison, Tex., and was required to pay the rate prescribed by the published tariffs for the journey from Atoka to Denison, and upon his refusal to pay an extra one cent per mile from Atoka to Colbert, in addition to the ticket and the cash fare tendered from Colbert to Denison, defendant was entitled to eject him from its train, and, in the absence of circumstances other than the mere fact of removing him from the train, plaintiff is not entitled to recover."

In the Colorado Free Pass Investigation, supra, the Interstate Commerce Commission regarded the use of a pass limited to transportation within the state to a point at or near the state line and a continuance from there out of the state on regular transportation as the use of the pass in interstate commerce. While the jury found appellee boarded the train at Gary in good faith, intending to stop off at Sayre for the transaction of business, and that he in good faith paid cash fare from Sayre to Texola, with the intention of stopping off at Texola, and abandoning his journey there, and that he was carried from Texola, Okl., to Benonine, Tex., while asleep, and without his knowledge, and consent, the facts remain that he traveled continuously from Gary to McLean without stopping off anywhere, and, according to his own testimony, would have continued his journey from Benonine back to Tahoka upon his mileage if he had not been ejected at McLean. If he had in fact stopped at Sayre and transacted his business between trains, there are some cases cited in the L. R. A. note, supra, which would support his contention that the continuity of his journey would have been broken, but he did not stop, and we are not required to pass upon that question. He is not seeking to recover damages because of the failure of the conductor to wake him at Sayre. The facts of this case, we think, bring it within the rule announced in the Holman and Ashinger Cases, and by analogy within the rule announced by the Supreme Court of this state in G., H. & S. A. Ry. Co. v. Wood-Hagenbarth Cattle Co., 105 Tex. 178, 146 S. W. 538.

[2] In support of his pleadings, appellee testified that after he had been ejected at McLean on the following day the station master, upon advice from "headquarters," sold him a ticket to Amarillo, taking up enough scrip from his mileage book to pay for his transportation from Benonine to Amarillo, and it is insisted here that by reason of that fact the appellant is estopped, and cannot contend that appellee was an interstate passenger. If under the federal law appellee was bound to pay the interstate rate for his transportation, and his status as an interstate passenger is thus fixed, no subsequent act of the appellant company would constitute an estoppel. Appellee's status during that journey is fixed by law, and not by what the officers of the railway company may think of it. Before an estoppel could arise, he must have been misled to his injury. In cutting out of his mileage book the equivalent of his fare from Benonine to Amarillo, the company has collected only 2½ cents per mile for his transportation when the interstate rate was 3 cents. The fact that through error or design the appellant is chargeable with unjust discrimination in appellee's favor, since his supposed cause of action accrued, could not estop the company from setting up its right to eject him in defense. Upon the uncontradicted testimony of appellee we think the trial court should have directed a verdict in appellant's favor.

The judgment is therefore reversed, and rendered in favor of appellant.