GULF, COLORADO AND SANTA FE RAILWAY COMPANY *v.* TEXAS.

ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.

No. 2. Argued October 11, 1906.—Decided February 25, 1907.

Where the facts are settled in the state court by special findings, those findings are conclusive upon this court.

An interstate shipment—in this case of car-load lots—on reaching the point specified in the original contract of transportation ceases to be an interstate shipment, and its further transportation to another point within the same State, on the order of the consignee, is controlled by the law of the State and not by the Interstate Commerce Act.

97 Texas, 274, affirmed.

IN the District Court of Tarrant County, Texas, on July 28, 1902, the State of Texas recovered a judgment against the Gulf, Colorado and Santa Fé Railway Company for one hundred dollars as a penalty for extortion in a charge for the transportation of a carload of corn from Texarkana, Texas, to Goldthwaite, Texas. This judgment was sustained by both the Court of Civil Appeals, 32 Tex. Civ. App. 1, and the Supreme Court of the State. 97 Texas, 274. Thereupon the railway company brought the case here on a writ of error.

The case was tried in the District Court without a jury. Findings of fact were made, which were sustained by the appellate courts. From them it appears that on January 13, 1902, the Texas and Pacific Railway Company, which owns and operates a railroad from Texarkana, Texas, to Fort Worth, Texas, executed a bill of lading by which it acknowledged the receipt from the Samuel Hardin Grain Company at Texarkana, Texas, of one car of sacked corn consigned to shippers, with orders to deliver to Saylor & Burnett, at Goldthwaite, Texas. This car of corn was transported by the Texas and Pacific Railway Company to Fort Worth, there delivered to the defendant railway company and by it transported to Goldthwaite, where it arrived on the seventeenth day of January, 1902. When it reached Goldthwaite, Saylor & Burnett, who were acting for the Samuel Hardin Grain Company, tendered the charges prescribed by the state railroad commission, which the agent declined to accept, and demanded and collected a larger sum. The following findings state the important facts upon which the controversy turns:

"8. On December 23d, 1901, the Samuel Hardin Grain Company, at Kansas City, Mo., offered to sell Saylor & Burnett, at Goldthwaite, Texas, No. 2 mixed corn at 86½ cents per bushel for delivery on railway track at Goldthwaite, and this offer was accepted for two carloads of corn. This offer and acceptance was by telegraphic communication between the parties at their respective places of business. The Hardin Grain Company did not at that time have the corn, but on December 24th,

1901, to fill the order it contracted with the Harroun Commission Company of Kansas City for the purchase—two 66,000-pound cars of No. 2 mixed corn at 75½ cents per bushel, to be delivered at Texarkana, Texas, to the Hardin Grain Company. Previously to this the Harroun Commission Company had contracted for the purchase of two cars of corn to be delivered to it at Texarkana, Texas, and with these two cars it expected to and did fill the order of the Hardin Grain Company. These cars had originated in Hudson, South Dakota. The receiving carrier at Hudson was the Chicago, Milwaukee and St. Paul Railway Company, who issued bills of lading limiting its liability to losses occurring on its road, with a like limitation of liability of all other carriers who should handle said corn in transit to its destination. By the terms of said bills of lading the corn was consigned to 'Forrester Bros., Texarkana, Texas,' and shipment made in cars of C. M. & St. P. Ry. Co., care of Kansas City Southern Ry. at Kansas City, Missouri, with the privilege to stop the corn at Kansas City for inspection and transfer. The corn reached Kansas City on December 17th, 1901, was there unloaded, sacked and transferred to the Kansas City Southern Railway Co., who, on December 31st, 1901, issued bills of lading reciting that the corn was loaded in cars No. 3845 P. G. and No. 4189 P. G., that same was received of Forrester Bros. and consigned as follows: 'Shipper's order, notify Harroun Commission Company, Texarkana, Texas,' and reciting further that freight 14 cents per hundred pounds was prepaid, and one of these cars, to wit, car 'No. 3845 P. G.' is the car in controversy in this suit.

"9. The Harroun Commission Company paid no freight on the corn from Hudson, South Dakota, to Texarkana, Texas, as it had purchased it to be delivered at Texarkana.

"10. The freight on the corn from Hudson to Texarkana was as follows: 18 cents per 100 pounds from Hudson to Kansas City and 14 cents from Kansas City to Texarkana, all of which was paid by the vendors of Harroun Commission Company. The minimum interstate rate from Hudson, South Dakota, to

Goldthwaite, Texas, was 46 cents per 100 pounds, which would have been apportioned as follows: 18 cents from Hudson to Kansas City, and 28 cents from Kansas City to Goldthwaite, Texas. The G., C. & S. F. Ry. Co., the T. & P. Ry. Co. and the Kansas City Southern Ry. Co., together with other connecting lines from Kansas City, Missouri, to Goldthwaite, Texas, had established a joint tariff of 35 cents per 100 pounds on shipments from Kansas City to Goldthwaite via Texarkana and originating in Kansas City, had agreed on a division of that rate between them and had filed tariffs establishing such rate with the Interstate Commerce Commission, and by such steps had brought itself within the provisions of the interstate commerce laws.

"11. The Hardin Grain Company's officers kept themselves informed of interstate commission freight rates and of the state commission rates, and the reason why they contracted for the corn to be delivered to them at Texarkana was because they could fill their contract with Saylor & Burnett at Goldthwaite at about 1½ cents per bushel cheaper than they could if they bought the corn for delivery to them at Kansas City and had it shipped from Kansas City to Goldthwaite.

"12. At the time of the purchase contract between the Hardin Grain Company and the Harroun Commission Company, Hardin, the manager of the former company, intended that the corn to be thereby acquired should go to Saylor & Burnett and should be shipped to Goldthwaite, from Texarkana, as soon as practicable, and on December 26th, 1901, two days after this contract for purchase had been made, Hardin was informed that the corn with which Harroun Commission Company expected to fill his order would be sacked in Kansas City and be shipped out of Kansas City to Texarkana, but at the time of making the contract he did not know from whence the corn would come.

"13. On December, 31st, 1901, the date of shipment from Kansas City to Texarkana, Harroun Commission Company informed the Hardin Grain Company that the corn to fill the

latter's order had been loaded to start to Texarkana, and requested instruction as to how the corn should be shipped from Texarkana for the guidance of F. L. Atkins, their agent at that place, who would attend to such reshipping for the Hardin Grain Company, as per former understanding. Thereupon and in compliance with such request blank bills of lading were made out by the Hardin Grain Company in Kansas City and furnished to the Harroun Commission Company, to be forwarded to F. L. Atkins. These bills of lading were to be executed by the Texas and Pacific Railway Company, and F. L. Atkins, as agent for the Hardin Grain Company, and were for shipment of the corn to Goldthwaite, Texas, consigned to 'Shipper's order, notify, etc.,' giving the numbers and initials of cars, which information had been furnished by the Harroun Commission Company, and on January 14, 1902, the reshipment having been made as per instructions, the bills of lading duly executed by the Texas and Pacific Ry. Co. were by Harroun delivered to Hardin Grain Company, who thereupon paid the Harroun Commission Company $1,779.64, the purchase price previously agreed upon for the corn, and the receipt of said blank bills of lading by the Harroun Commission Company was the first information had by that company of the intended final destination and disposition of the corn.

"14. Neither Hardin Grain Company nor Harroun Commission Company had any store or warehouse at Texarkana, but under the agreement between the two companies (Hardin and Harroun) one F. L. Atkins, who was the agent of the Harroun Commission Company, and stationed at Texarkana, reshipped the corn at Texarkana for the Hardin Grain Company. That shipment was to Goldthwaite, Texas, over the Texas & Pacific Ry. Co. and the G., C. & S. F. Ry. Co., by bill of lading reciting its receipt from Hardin Grain Company, and consigned to 'Shipper's order, notify Saylor & Burnett, Goldthwaite, Texas,' and was transferred under original seals and without breaking packages, to the Texas & Pacific Ry. Co., after having remained in Texarkana five days, the only

thing done by F. L. Atkins was to surrender the Kansas City Southern bill of lading, have the cars set over on the T. & P. Ry., and take a bill of lading from the latter company. The corn reached Texarkana January 7th, 1902, and was shipped out from Texarkana January 13th, 1902; the defendant was not a party to the bill of lading executed at Texarkana.

"15. On December 31st, 1901, Hardin Grain Company mailed to Saylor & Burnett an invoice of the corn in the form of an account stating the car No.'s and initial, the amount of corn and price to be paid by Saylor & Burnett."

*Mr. Gardiner Lathrop,* with whom *Mr. Aldis B. Browne* and *Mr. J. W. Terry,* were on the brief, for plaintiff in error:

Transportation of freight from a point in one State to a point in another is of itself interstate commerce without reference to any question of intended sale of freight. Such a shipment does not become intrastate commerce when it reaches the state line, but continues interstate commerce until delivery at the final place of destination in the State. *Rhodes* v. *Iowa,* 170 U. S., 412. The intention of the parties who control the shipment determines the place of final destination in the State. The mere fact that a sale is made of the freight while in transit to the place of final destination does not change its character from interstate to state commerce. *Kelley* v. *Rhodes,* 188 U. S. 1; *United States* v. *Freight Assn.,* 166 U. S. 290; *McCall* v. *California,* 136 U. S. 108; *Norfolk & Western Ry. Co.* v. *Pennsylvania,* 136 U. S. 114; *Wabash Ry.* v. *Illinois,* 118 U. S. 570, 573, 574; *Hanley* v. *Kansas City Southern Ry. Co.,* 187 U. S. 617.

If railroad companies by manipulation or form may not make that a state or territory shipment which otherwise would be an interstate commerce transaction, for the same reason it necessarily follows that those who determine the destination of the freight cannot deprive it of its quality of interstate commerce by the form which they may elect to give to the transaction. *Cutting* v. *Fla. Ry. & Nav. Co.,*

46 Fed. Rep. 641; *The Daniel Ball*, 10 Wall. 557; *Ex parte Kœhler*, 30 Fed. Rep. 867; *Houston Direct Navigation Co.* v. *Insurance Co.*, 89 Texas, 1; *State* v. *Southern Kansas Ry. Co.*, 49 S. W. Rep. 252; *M., K. & T. Ry.* v. *Fielder*, 46 S. W. Rep. 633; *G., C. & S. F. Ry. Co.* v. *Ft. Grain Co.*, 72 S. W. Rep. 419.

The power to tax does not alone determine whether the transaction is one of interstate commerce. The decisions of the courts have been more liberal in sustaining authority of the State to tax than in cases where the attempted regulation of the State applies directly to interstate shipments such as in this case regulating the amount of the charge to be made by the carrier.

*Mr. Robert Vance Davidson*, Attorney General of the State of Texas, for defendant in error:

The Supreme Court of Texas did not err in its conclusion of law in finding that the shipment in controversy from Texarkana, Texas, to Goldthwaite, Texas, was not an interstate shipment, but originated and terminated in the State of Texas. Interstate Commerce Act, § 1; *Interstate Com. Comm.* v. *Brimson*, 154 U. S. 457; *Railroad Co.* v. *Interstate Com. Comm.*, 162 U. S. 191; *New York* v. *Knight*, 192 U. S. 21; *Brown* v. *Houston*, 114 U. S. 622; *Diamond Match Co.* v. *Ontonogon*, 188 U. S. 82, 92; *Coe* v. *Erroll*, 116 U. S. 517; *Railroad Co.* v. *Osborne*, 10 U. S. App. 430; *Bridge Co.* v. *Railway Co.*, 37 Fed. Rep. 613; *Ft. W. & D. C. Ry. Co.* v. *Whitehead*, 6 Texas Civ. App. 595.

Transportation from a point in one State to a point in another State constitutes interstate commerce; but when the commodity transported has reached the termination of its journey and has been delivered to the consignee, it ceases to be a subject of interstate commerce and the subsequent shipment from the point at which it has been delivered to another point in the State, is an intrastate shipment. *Coe* v. *Erroll*, 116 U. S. 517; *Ft. W. & D. C. Ry. Co.* v. *Whitehead*, 6 Texas C. C. A. 595; *C., N. O. & T. P. R. R. Co.* v. *Interstate Com. Comm.*, 162 U. S. 184; *S. C.*, Civ. App., 56 Fed. Rep. 925; *C. & N. W. Railway Co.* v.

*Osborne,* 52 Fed. Rep. 912; *Interstate Com. Comm.* v. *B. Z. & C. Ry. Co.,* 77 Fed. Rep. 942; *Interstate Com. Comm.* v. *Detroit, etc., Ry. Co.,* 167 Fed. Rep. 642; *United States* v. *Interstate Com. Comm.,* 81 Fed. Rep. 783; *G., C. & S. F. Ry. Co.* v. *M. S. S. Co.,* 86 Fed. Rep. 407; *M. & I. R. R. Co.* v. *G. & S. S. R. R. Co.,* 1 Interstate Com. Comm. Rep. 30.

When the corn arrived at Texarkana and was delivered to the consignee it became a part of the property situated within the State of Texas and subject to the laws of that State.   17 Am. & Eng. Enc. of Law, 2d ed. 71; *Robbins* v. *Shelby Co.,* 120 U. S. 497.

When commodities have been transported from a point without the limits of a State to a point within the State, to which, under the contract of shipment, they were to be transported, and the contract of shipment complied with, and ended, such commodities have ceased to be articles of interstate commerce, and are thereafter in all respects subject to the laws of the State in which they may be, and this although the shipper may have intended from the beginning that they were to be immediately taken to some place within the State other than that to which the carrier had contracted to convey them.  The motives of an importer or shipper can not be looked to for the purpose of causing commodities to continue subjects of interstate commerce, which would have ceased to be such but for such motives.

The Texas & Pacific Railway Co., the carrier which transported the corn from Texarkana to Fort Worth, and the plaintiff in error, which transported it from Fort Worth to Goldthwaite, were not shown by the evidence to have had any agreement with other carriers to transport said corn, by through bill of lading or in any other manner, and upon the receipt of said corn at Texarkana, Texas, by the Texas & Pacific, it had the right to demand and receive its Texas state rate to Fort Worth, and the plaintiff in error its Texas state rate from Fort Worth to Goldthwaite, and neither of said railroads had the right to charge more or any other rate, or voluntarily convert a local shipment into an interstate shipment, especially

when such interstate shipment from Hudson, South Dakota, to Texarkana, Texas, had terminated at Texarkana, and the corn had been there delivered; and it is immaterial what might have been the motives or intentions of any of the parties to the transaction in the shipment of the corn to Texarkana. *Interstate Com. Comm.* v. *C., N. O. Ry. Co.*, 66 Fed. Rep. 925; *C., N. O. Ry. Co.* v. *Interstate Com. Comm.*, 162 U. S. 192; *So. Pacific Ry. Co.* v. *Interstate Com. Comm.*, 200 U. S. 553; *Texas &c. R. R. Co.* v. *Interstate Com. Comm.*, 43 Fed. Rep. 37; *L. & N. R. R. Co.* v. *West Coast Naval Stores Co.*, 198 U. S. 483; *United States* v. *Knight Co.*, 156 U. S. 13; *Railway Co.* v. *Osborne*, 52 Fed. Rep. 912.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The single question in the case is whether, as between Texarkana and Goldthwaite, this was an interstate shipment. If so the regulations of the state railroad commission do not control, and the court erred in enforcing the penalty. If, however, it was a purely local shipment, the judgment below was right and should be sustained.

The facts are settled by the special findings, those findings being conclusive upon this court. *Dower* v. *Richards*, 151 U. S. 658; *Egan* v. *Hart*, 165 U. S. 188; *Thayer* v. *Spratt*, 189 U. S. 346; *Adams* v. *Church*, 193 U. S. 510; *Clipper Mining Co.* v. *Eli Mining & Land Co.*, 194 U. S. 220.

The corn was carried from Texarkana, Texas, to Goldthwaite, Texas, upon a bill of lading which upon its face showed only a local transportation. It is, however, contended by the railway company that this local transportation was a continuation of a shipment from Hudson, South Dakota, to Texarkana, Texas; that the place from which the corn started was Hudson, South Dakota, and the place at which the transportation ended was Goldthwaite, Texas; that such transportation was interstate commerce, and that its interstate character was not

affected by the various changes of title or issues of bills of
lading intermediate its departure from Hudson and its arrival
at Goldthwaite.

It is undoubtedly true that the character of a shipment,
whether local or interstate, is not changed by a transfer of
title during the transportation. But whether it be one or the
other may depend on the contract of shipment. The rights
and obligations of carriers and shippers are reciprocal. The
first contract of shipment in this case was from Hudson to
Texarkana. During that transportation a contract was made
at Kansas City for the sale of the corn, but that did not affect
the character of the shipment from Hudson to Texarkana.
It was an interstate shipment after the contract of sale as well
as before. In other words, the transportation which was con-
tracted for, and which was not changed by any act of the
parties, was transportation of the corn from Hudson to Tex-
arkana—that is, an interstate shipment. The control over
goods in process of transportation, which may be repeatedly
changed by sales, is one thing; the transportation is another
thing, and follows the contract of shipment, until that is
changed by the agreement of owner and carrier. Neither the
Harroun nor the Hardin company changed or offered to change
the contract of shipment, or the place of delivery. The Hardin
company accepted the contract of shipment theretofore made
and purchased the corn to be delivered at Texarkana—that is,
on the completion of the existing contract. When the Hardin
company accepted the corn at Texarkana the transportation
contracted for ended. The carrier was under no obligations
to carry it further. It transferred the corn, in obedience to
the demands of the owner, to the Texas and Pacific Railway
Company, to be delivered by it, under its contract with such
owner. Whatever obligations may rest upon the carrier at
the terminus of its transportation to deliver to some further
carrier, in obedience to the instructions of the owner, it is
acting not as carrier, but simply as a forwarder. No new
arrangement having been made for transportation, the corn

was delivered to the Hardin company at Texarkana. Whatever may have been the thought or purpose of the Hardin company in respect to the further disposition of the corn, was a matter immaterial so far as the completed transportation was concerned.

In this respect there is no difference between an interstate passenger and an interstate transportation. If Hardin, for instance, had purchased at Hudson a ticket for interstate carriage to Texarkana, intending all the while after he reached Texarkana to go on to Goldthwaite, he would not be entitled on his arrival at Texarkana to a new ticket from Texarkana to Goldthwaite at the proportionate fraction of the rate prescribed by the Interstate Commerce Commission for carriage from Hudson to Goldthwaite. The one contract of the railroad companies having been finished he must make a new contract for his carriage to Goldthwaite, and that would be subject to the law of the State within which that carriage was to be made.

The question may be looked at from another point of view. Supposing a carload of goods was shipped from Goldthwaite to Texarkana under a bill of lading calling for only that transportation, and supposing that the laws of Texas required, subject to penalty, that such goods should be carried in a particular kind of car, can there be any doubt that the carrier would be subject to the penalty, although it should appear that the shipper intended after the goods had reached Texarkana to forward them to some other place outside the State? To state the question in other words, if the only contract of shipment was for local transportation, would the state law in respect to the mode of transportation be set one side by a Federal law in respect to interstate transportation on the ground that the shipper intended after the one contract of shipment had been completed to forward the goods to some place outside the State? *Coe* v. *Errol*, 116 U. S. 517–527.

Again, it appeared that this corn remained five days in Texarkana. The Hardin company was under no obligation to

ship it further. It could in any other way it saw fit have provided corn for delivery to Saylor & Burnett, and unloaded and used that car of corn in Texarkana. It must be remembered that the corn was not paid for by the Hardin company until its receipt in Texarkana. It was paid for on receipt and delivery to the Hardin company. Then, and not till then, did the Hardin company have full title to and control of the corn, and that was after the first contract of transportation had been completed.

It must further be remembered that no bill of lading was issued from Texarkana to Goldthwaite until after the arrival of the corn at Texarkana, the completion of the first contract for transportation, the acceptance and payment by the Hardin company. In many cases it would work the grossest injustice to a carrier if it could not rely on the contract of shipment it has made, know whether it was bound to obey the state or Federal law, or, obeying the former, find itself mulcted in penalties for not obeying the law of the other jurisdiction, simply because the shipper intended a transportation beyond that specified in the contract. It must be remembered that there is no presumption that a transportation when commenced is to be continued beyond the state limits and the carrier ought to be able to depend upon the contract which it has made and must conform to the liability imposed by that contract.

We see no error in the proceedings and the judgment of the Supreme Court of Texas is

*Affirmed.*